519 So.2d 371 (1988)
PIGGLY WIGGLY OF MANSFIELD, INC., Appellee,
v.
WOLPERT ASSOCIATES, Appellant.
No. 19296-CA.
Court of Appeal of Louisiana, Second Circuit.
January 20, 1988.
Rehearing Denied February 18, 1988.
Writ Denied April 7, 1988.
*372 Burkett and Chevallier by Don M. Burkett, Many, for plaintiff/appellee.
Mayer, Smith & Roberts by Richard G. Barham, Shreveport, for Wal-Mart Stores, Inc.
Booth, Lockard, Politz LeSage & D'Anna by John R. D'Anna, Shreveport, for Mansfield Associates.
Before HALL, FRED W. JONES, Jr. and NORRIS, JJ.
FRED W. JONES, Jr., Judge.
Plaintiff tenant, owner of a shopping center grocery store, sued its landlord to enjoin the violation of a lease clause prohibiting other tenants in the shopping center from selling groceries. The landlord filed a third party demand against the other tenant, a discount store, allegedly selling the groceries. From a judgment granting the injunction in favor of plaintiff and the third party plaintiff, the defendants landlord and discount store tenant appealed. For the reasons explained, we reverse.
On September 17, 1979, the predecessor of Mansfield Associates, Inc. contracted with Wal-Mart Stores, Inc. to lease a building for use as a discount department store in a shopping center to be constructed in Mansfield. The lease provided that Wal-Mart could use the premises in their "operation as a discount store, but Lessor agrees that the store may be used for any lawful purpose except a supermarket so long as a supermarket is open and operating." The discount store was opened for business on September 3, 1980.
On October 30, 1979 the predecessor of Mansfield Associates, Inc. contracted with Piggly Wiggly of Mansfield, Inc. ("Piggly Wiggly") to lease a building in the same shopping center with the exclusive right to operate as a supermarket in the shopping center. It was stipulated that the lessor agreed "to prohibit any other tenant on said property from selling grocery, meats, dairy, deli or bakery products and produce." Piggly Wiggly opened for business in the shopping center on May 3, 1981.
On August 23, 1984 Piggly Wiggly filed this suit and the landlord third partied Wal-Mart.
It was shown at the trial that Wal-Mart began using a 20 foot shelf for the sale of nonperishable food items such as potato chips and jellies. Later another 20 foot shelf was added for expansion of the described items. Baby food and pet food were sold in other departments. Wal-Mart never sold milk, bread, fresh produce or cut meats.
On May 4, 1981 the owner of Piggly Wiggly, Thompkins, executed with the landlord an "estoppel certificate" which provided in part:
"Neither party is in default of the terms, covenants or conditions of the lease including without limitation the payment of rent or any other amount due *373 thereunder, and no act, omission or event has occurred which will now or hereafter authorize either party to declare a default under the terms of the lease."
Reynolds, buyer for Wal-Mart's food department when the Mansfield store opened, testified that 850 of the discount store's 50,000 square feet of floor space was taken up by food items. Benson, manager of the Wal-Mart store in Mansfield from September 1981 to August 1984 stated that about 4% of Wal-Mart's gross sales were attributable to food items. He also testified that Thompkins came in the discount store in 1983 to look at trash compactors and, necessarily, walked past the food department.
Without giving reasons, the trial judge ordered issuance of the requested injunction. Appellants contend he erred in failing to find Piggly Wiggly was estopped from pursuing its action, in finding Piggly Wiggly showed irreparable harm, and in finding that Wal-Mart was operating a supermarket.
We note, first, that the lessor executed the Wal-Mart lease prior to the Piggly Wiggly lease. Wal-Mart was not prohibited from selling grocery items but was prohibited from operating a supermarket. Since the evidence did not show the operation by Wal-Mart of a supermarket in the shopping center, the third party plaintiff was not entitled to an injunction against Wal-Mart.
Be that as it may, we find that Thompkin's execution of the "estoppel certificate" on behalf of Piggly Wiggly constituted an express waiver by that party of any right it might have under the lease to enjoin the lessor from violation of the clause in question with regard to the sale by Wal-Mart of grocery items in the shopping center. Thompkins is presumed to have read and understood the certificate which provided that as of May 8, 1981 neither the landlord nor Piggly Wiggly was in default of the terms of the lease. Wal-Mart had opened for business in the shopping center on September 23, 1980, and began selling grocery items, some eight months before Thompkins signed the certificate.
In Blanchard v. Shrimp Boats of La., Inc., 305 So.2d 748 (La.App. 4th Cir.1974), the court found that the lessor had impliedly waived his right to reject subleases by the lessee. It was noted that a waiver "can be written, oral or implied from actions by the lessor." In our case the waiver was written. Consequently, Piggly Wiggly waived its right to enforce the lease clause under which the lessor was to prohibit Wal-Mart from selling grocery items.
For these reasons, the judgment of the trial court is reversed and there is judgment dismissing plaintiff's suit and the third party demand. All court costs, both in the trial court and on appeal, are assessed to Piggly Wiggly.

ON APPLICATION FOR REHEARING
Before JASPER E. JONES, FRED W. JONES, Jr., NORRIS, HALL and MARVIN, JJ.
Rehearing denied.